## CARLSON HOIST MACH. CO., Inc., v. BUILDERS EQUIPMENT CORPORATION.*

District Court, S. D. New York.

July 16, 1937.

Moses & Nolte, of New York City, for plaintiff.

Hauff & Warland, of New York City, for defendant.

PATTERSON, District Judge.

The suit is for infringement of two patents to Carlson, 1,776,414 issued September 23, 1930, and 1,931,978 issued October 24, 1933. Both patents relate to apparatus for hoisting plaster or other material in the course of building construction.

The apparatus covered by the first Carlson patent consists of a single mast made up of sections and erected outside the wall of a building under construction, braces tying the mast to the wall through window openings, and a bucket slidable along guides on the mast, the bucket being operated by a cable over a pulley at the top of the mast and being capable of dumping at the window openings. Each section of the mast has guide members fastened to the sides, and the guide members are not coterminous with the section of the mast, the result being that when sections are placed end to end and the overlapping guide members of one section are bolted to the adjoining section

*Decree affirmed 96 F.2d 145.

lap joints on each side are formed which hold the sections firmly together. At each window opening a brace bolted to the mast extends through one side of the window opening. Cleats and clips fastened to the brace grip the outer and inner faces of the wall on that side of the opening, and wedging pieces forced in horizontally across the opening keep the cleats in position. A dumping bucket is mounted on a carrier with guide pieces that partially embrace the guides on the mast and permit a sliding action. The carrier is operated up and down by a cable which passes over a pulley at the top of the mast and thence down to a hoisting machine on the ground. At the window openings the bucket is tilted and the contents dumped into chutes.

Claim 1 of the first Carlson patent, the only claim of that patent claimed to be infringed, reads: "A hoisting apparatus for use with buildings under erection including a sectional mast disposed adjacent and parallel to a wall of the building having window openings therein, guides fastened to said mast serving to hold the sections thereof together, an element slidable along said guides, braces extending from the mast to one side of said openings, and means interposed between the other side of the latter and said braces keeping the same in their assigned positions."

The second Carlson patent differs from the first in several respects. It calls for two masts united at the top by a cross piece carrying the pulley; the bucket carrier is guided on both sides by guides on the masts; another type of bracing is used at the window openings. At each window opening two braces, one bolted to each mast, are offset inwardly and pass through the window opening at the lower corners. The braces are held in position by crossties bearing against both faces of the building, each crosstie having bolts mounted on a bracket and passing through slots in the braces. When the members are in proper position and the bolts are tightened, the braces are held securely to the wall. Claim 2 of this patent, said to be infringed, is thus: "A hoisting apparatus for use with buildings under erection, including a pair of spaced parallel masts, a carrier frame disposed between the masts and partially embracing the same, struts disposed outside the masts and secured to the outer faces thereof, said struts extending toward the building and being offset inwardly and passing through an opening in the building wall, a cross tie adjacent the building wall rigidly uniting the struts, and means adjustably carried by the struts for bearing against the inner face of the building wall."

The defendant's apparatus is in many respects similar to that shown in Carlson's second patent. There are two masts, each made up of sections wherein the guides of one section overlap the next section so that with bolts a lap joint is made. There is a crosspiece at the top with two pulleys. The bucket carrier engages the guide pieces of the masts. The masts are braced against the wall by the use of window openings, the effect of the braces being the same as with Carlson though the details are somewhat different. The defendant's braces do not extend through the window openings. The inner ends are fastened to a cross-member that is placed against the outer face of the wall. A similar cross-member is placed against the inner face, and the two cross-members are fastened and a clamping action produced by tie bolts that pass through the window opening. The braces extend beyond the masts, their outer ends being connected by another piece so that the whole forms a square frame around the masts.

■ The defendant's stand is that the claims of the two Carlson patents in suit must be narrowly construed in view of the prior art and that with the claims so construed there is no infringement. In my opinion this stand is sound.

The prior patented art reveals a number of hoisting devices for lifting plaster and other materials for buildings in course of construction by means of a mast or masts guiding a slidable bucket or other carrier on a cable, devices in which supporting towers are not used. A one-mast apparatus with pulley on top is shown by Harris 710,686, and by Adam 1,539,344. Two-mast devices with cross-head and pulleys were called for by Newman 809,456, Peirce 1,007,483, Bathrick 1,009,037, Levalley 1,168,947, and Murphy 1,650,847. That the masts should be sectional, that is, in separate pieces fastened together on the job, was taught by Harris, Levalley, and Murphy, and was doubtless taken for granted by others. It was likewise familiar that the mast or masts should be braced by horizontal pieces tied in some fashion to the adjacent wall, as is evident from Harris, Bathrick, Levalley, and

Adam; and Murphy had the idea that window openings in the wall should be availed of for this purpose. With Murphy the masts were erected near a wall with window openings; at the window openings frames of outer and inner timbers were clamped by tie bolts passing through the openings, and brackets fastened to the outer timber ran out to the masts. In fact, the Murphy window braces were practically the same as the window braces now being used by the defendant. It is true that in Murphy's apparatus a piece from the top of the structure to the roof of the building was intended to carry the load of the bucket, thus relieving the masts of that function and making them serve as guides only. The fact remains, however, that the Murphy window braces were an essential part of the Murphy apparatus, for the masts even as guides had to be held firmly in position.

A study of the prior patents shows that the first Carlson patent, on the first claim in it, was new only in the method of joining and holding together the sections of the mast, that is to say, by lap joint, and in the particular construction of window braces. The latter involved a single brace running from the mast through a window opening and fastened by cleats to one side of the opening; a wedge across the opening made the brace fast against movement in the direction of the wall. The defendant practices the lap-joint construction of the mast, but this method of joining pieces end to end is so well known that there was no invention in this feature of Carlson's structure. We may assume that there was invention in a hoisting device with Carlson's particular means of window bracing, but these means the defendant does not imitate. Its window braces, as already pointed out, follow Murphy more closely than Carlson.

With the second Carlson patent, claim 2 of it being the one claim now involved, the only novelty is in the particular means of window bracing. The method of joining sections of the masts to one another is not mentioned in this claim. As for the window bracing, the braces fastened to the masts pass through the window opening and are adjustably fastened by bolts to cross pieces on the outer and inner faces of the wall. For this precise method of bracing the masts the patent may be good, but the conclusion must be that the defendant

has not infringed, since the defendant for window braces follows the prior teaching of Murphy.

The bill will be dismissed for lack of infringement.